UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

**Civil No. 17-5011 (JRT/TNL)**

QFO LABS, INC.,

                                Plaintiff,

v.

BEST BUY STORES, L.P.;
BESTBUY.COM, LLC; and BEST BUY
TEXAS.COM, LLC,

                                Defendants.

------------------------------------------------------

**Civil No. 17-5012 (JRT/TNL)**

QFO LABS, INC.,

                                Plaintiff,

v.

TARGET CORPORATION,

                                Defendant.

------------------------------------------------------

**Civil No. 17-5014 (JRT/TNL)**

QFO LABS, INC.,

                                Plaintiff,

v.

AMAZON.COM, INC.,

                                Defendant.

**MEMORANDUM OPINION
AND ORDER GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS**

Bryan R. Feldhaus and Phillip A. Cole, **LOMMEN ABDO, PA,** 1000 International Centre, 920 Second Avenue South, Minneapolis, MN 55402, for plaintiff.

Anthony H. Handal, **HANDAL & MOROFSKY LLC,** 83 East Avenue, Suite 308, Norwalk, CT 06851, for Defendants Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC.

Grant D. Fairbairn, **FREDRIKSON & BYRON, PA,** 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for all defendants.

Katherine J. Rahlin, **FREDRIKSON & BYRON, PA,** 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Target Corporation and Amazon.com, Inc.

Plaintiff QFO Labs, Inc. ("QFO") brought these patent infringement actions (the "Present Actions") against three large retailers: (1) Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC (collectively "Best Buy"); (2) Amazon.com, Inc. ("Amazon"); and (3) Target Corporation ("Target") (collectively "Defendants"). QFO alleges that Defendants infringe three QFO patents by selling certain unmanned aerial vehicles, i.e., drones, multirotors, quadcopters, etc. Defendants move to dismiss or, in the alternative, transfer or stay the Present Actions. Defendants argue that the Present Actions should be dismissed pursuant to the "first-to-file" rule because the Present Actions substantially overlap with a declaratory judgment action brought by Parrot, Inc. ("Parrot") against QFO in the United States District Court for the District of Delaware (the "Delaware Action"). Parrot is the manufacturer of most of the accused products in the Present Actions.

Because the Court will find that the first-to-file rule applies to the Present Actions, the Court will stay the Present Actions pending resolution of the Delaware Action.

**BACKGROUND**

The Present Actions are not the first time the Court has adjudicated a dispute regarding Parrot's products accused of infringing QFO's patents. *See QFO Labs, Inc. v. Parrot, Inc.* ("*Minn. Action R&R*"), 2017 WL 2638389, at *8 (D. Minn. May 26, 2017), *R&R adopted*, 2017 WL 2634155 (D. Minn. June 19, 2017). Nor was the Court's prior ruling the beginning of this dispute. Rather, the dispute began about four years ago when QFO first accused Parrot of infringing two of QFO's patents: U.S. Patent No. 7,931,239 ("the '239 Patent") and U.S. Patent No. 9,073,532 ("the '532 Patent"). *Id.* at *1. The parties attempted to negotiate a licensing agreement, but the negotiations broke down when the parties could not agree on payment for past infringement. *Id.* at *2.

**I.   IPR PROCEEDINGS**

In 2016, Parrot filed two petitions for inter partes review ("IPR") with the U.S. Patent & Trademark Office challenging the validity of the '239 Patent and the '532 Patent. *Id.* at *2. The Patent Trial and Appeal Board instituted IPRs on one claim of the '239 Patent and a set of claims in the '532 Patent and issued final written decisions on February 15, 2018. The Board found claim 10 of the '239 Patent invalid, as would be QFO's proposed substitute claim 11. (Decl. of Grant Fairbairn ("Fairbairn Decl.") ¶ 3, Ex. B at 64, Feb. 20, 2018, Case No. 17-5011, Docket No. 27-1.) The Board also found claims 8-14 of the '532 Patent invalid, as would be QFO's proposed substitute claims 25-31. (Fairbairn Decl. ¶ 4, Ex. C at 135.) QFO has appealed both decisions to the Federal Circuit. (Decl. of Bryan Feldhaus ¶ 3, Ex. A, Mar. 13, 2018, Case No. 17-5011, Docket No. 39.)

Parrot has since filed three more IPR petitions on QFO's patents. (2d Am. Compl. ¶ 30, Feb. 13, 2018, Case No. 17-5011, Docket No. 23.) Two petitions – one for the '239 Patent and one for the '532 Patent – were denied. (*Id.* ¶ 32.) The third IPR petition involved U.S. Patent No. 9,645,580 ("the '580 Patent"), which issued to QFO in May 2017 and is in the same patent family as the '239 Patent and the '532 Patent. (*Id.* ¶¶ 5, 16, 18, 30.) Parrot's third petition was also denied. (*Id.* ¶ 33.)

II. **THE DELAWARE ACTION**

On the same day that it filed the first two IPR Petitions, Parrot filed the Delaware Action, seeking a declaration that the '239 Patent and the '532 Patent are invalid and that Parrot does not infringe them. *Minn. Action R&R*, 2017 WL 2638389, at *2; *see Parrot S.A. v. QFO Labs, Inc.*, No. 16-682 (D. Del.). Shortly after the '580 Patent issued, Parrot amended its complaint to include a declaratory judgment count as to the '580 Patent. (Best Buy Compl. ¶ 27.) Parrot and QFO stipulated to a stay of the Delaware Action pending resolution of the IPR proceedings "in an effort to conserve the resources" of the court and the parties. (*Id.*, Ex. N at 3.)

III. **THE MINNESOTA ACTION**

Two months after Parrot filed the Delaware Action, QFO filed an action in Minnesota (the "Minnesota Action") against Parrot, alleging that Parrot's products infringe the '239 Patent and the '532 Patent.[1] *Minn. Action R&R*, 2017 WL 2638389, at *2. Parrot

---

[1] The Court dismissed the Minnesota Action before the '580 Patent was implicated in the action. (Best Buy Compl. ¶ 28.)

4

moved to dismiss, transfer, or stay the Minnesota Action on the ground that the first-filed Delaware Action should take precedence. *Id.*

The magistrate judge recommended granting Parrot's motion and dismissing QFO's action. *Id*. at *9. She noted that the parties did not dispute that the Delaware Action was filed two months before the Minnesota Action or that "the underlying issues in the two actions [were] virtually, if not entirely, identical." *Id.* at *3. She then analyzed the convenience factors in determining whether sound reason existed for declining to give priority to the Delaware Action. Ultimately, the magistrate judge found "no sound reason to make an exception to the application of the first-filed rule," but rather "strong reasons based in jurisdictional and venue concerns to give priority to the first-filed action in Delaware." *Id.* at *8. She recommended dismissal rather than transfer because the legal and factual issues in the Delaware Action and the Minnesota Action were identical. *Id.* The Court adopted the R&R and dismissed the Minnesota Action. *QFO Labs, Inc.*, 2017 WL 2634155, at *1.

## IV. THE PRESENT ACTIONS

Les than five months after the Court dismissed the Minnesota Action, QFO filed the Present Actions. QFO filed a complaint against Best Buy (the "Best Buy Action"), alleging that Best Buy sells Parrot products that infringe the '239 Patent, the '532 Patent, and the '580 Patent. (Compl. ¶¶ 17-24, Nov. 3, 2017, Case No. 17-5011, Docket No. 1.) QFO then filed an Amended Complaint, asserting that Best Buy sells non-Parrot products that also infringe QFO's patents. (Am. Compl. ("Best Buy Compl.") ¶ 17, Nov. 22, 2017, Case

5

No. 17-5011, Docket No. 5.)[2] Best Buy asserts that Parrot products account for 92% of the total revenue for all accused products, while non-Parrot products account for only 8%. (Decl. of Derek Noer ¶¶ 3-4, Feb. 20, 2018, Case No. 17-5011, Docket No. 28.) No claim at issue in the two pending IPR appeals is asserted by QFO in the Best Buy Action. (Best Buy Compl. ¶ 31.)

QFO also filed a Complaint against Target (the "Target Action"). (Compl. ("Target Compl."), Nov. 3, 2017, Case No. 17-5012, Docket No. 1.) The Complaint was almost identical to the Best Buy Complaint. It alleged that Target infringes the same patents by selling Parrot products. (*Id.* ¶¶ 17-24.) As in the Best Buy Action, QFO filed an Amended Complaint alleging infringement by Target's sale of non-Parrot products. (Am. Compl. ¶ 17, Nov. 22, 2017, Case No. 17-5012, Docket No. 5.) Target asserts that Parrot products account for 93% of the total revenue at issue, while non-Parrot products make up only 7%. (Decl. of Tinzing Artmann ¶ 3, Feb. 20, 2018, Case No. 17-5012, Docket No. 23.)

Last but not least, QFO filed a Complaint against Amazon. (Compl. ("Amazon Compl."), Nov. 3, 2017, Case No. 17-5014, Docket No. 1.) The Complaint was almost identical to the complaints in the Best Buy and Target Actions. It too alleged that Amazon infringes the same patents by selling and offering to sell Parrot products. (*Id.* ¶¶ 17-24.) And QFO's Amended Complaint against Amazon adds non-Parrot drones, just like its Best Buy and Target brethren. (Am. Compl. ¶ 17, Nov. 22, 2017, Case No. 17-5014, Docket No. 6.) Amazon asserts that Parrot products account for 89% of the total revenue for the

---

[2] QFO's Second Amended Complaint merely corrects the names of the Best Buy entities and has no bearing on the legal analysis of the present motions to dismiss.

accused products, while non-Parrot products account for 11%. (Decl. of Pietro Maggiani ¶ 2, Feb. 20, 2018, Case No. 17-5014, Docket No. 21.)

Three days after the initial filing of the Present Actions, the Minneapolis Star Tribune ran an article entitled "QFO of Bloomington is locked in a drone battle with Parrot of France." (Fairbairn Decl. ¶ 2, Ex. A.) The article referred to the Present Actions as the "latest salvo in a legal battle between QFO Labs and Parrot" and included quotes from QFO's CEO/patent attorney and its president/chief operating officer. (*Id.* at 2.) Neither the article nor QFO's officers mentioned any drone manufacturers besides Parrot. (*Id.*) QFO filed the amended complaints in the Present Actions just over two weeks after the article was published and shortly before the original answer deadline. Parrot is the only manufacturer common to all three of the Present Actions.

QFO is incorporated in Delaware but has its principal place of business in Minnesota. (Best Buy Compl. ¶ 1.) QFO alleges that the various Best Buy Defendants are incorporated in Virginia but have a principal place of business in Minnesota. (2d Am. Compl. ¶ 2, Feb. 13, 2018, Case No. 17-5011, Docket No. 23.) QFO alleges that Target is incorporated and has its principal place of business in Minnesota. (Target Compl. ¶ 2.) QFO alleges that Amazon is incorporated and has its principal place of business in Washington. (Amazon Compl. ¶ 2.)

Defendants move to dismiss or, in the alternative, transfer or stay the Present Actions. (Best Buy's Mot. to Dismiss, Feb. 20, 2018, Case No. 17-5011, Docket No. 24; Target's Mot. to Dismiss, Feb. 20, 2018, Case No. 17-5012, Docket No. 19; Amazon's Mot. to Dismiss, Feb. 20, 2018, Case No. 17-5014, Docket No. 17.)

**DISCUSSION**

Defendants argue that the Present Actions should be dismissed pursuant to the first-to-file rule because they are duplicative of the Delaware Action. They argue that QFO brought these actions against them instead of Parrot in a thinly veiled attempt to circumvent the Court's prior dismissal in the Minnesota Action and that QFO added non-Parrot products in a manipulative attempt to distinguish the Present Actions from the Delaware Action. QFO argues that the Present Actions should not be dismissed, transferred, or stayed because they involve different parties, different claims, and different accused products than the Delaware Action. The Court will find that the Present Actions are duplicative of the Delaware Action and will stay the Present Actions pending resolution of the Delaware Action.

**I.     STANDARD OF REVIEW**

"[W]hen cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014). The first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases." *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016). The purpose of the rule is "to avoid conflicting decisions and promote judicial efficiency." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). It "generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Id.*

Under the first-to-file rule, a district court may – in its discretion – dismiss, transfer, or stay a duplicative, later-filed action if the two actions substantially overlap. *Id*. Because the determination of whether a second patent infringement action is duplicative is closely tied to substantive patent law, Federal Circuit law applies. *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013). Application of the rule is discretionary, but the first-filed suit is preferred unless "such preference should yield to the forum in which all interests are best served." *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993)). When there is less overlap between the two actions, "the second district court has considerably more discretion." *In re Telebrands Corp.*, 824 F.3d at 984. The Court may consider the extent of the overlap, the likelihood of conflict, and the comparative advantage or interest of each forum in resolving the dispute. *Id*.

## II. APPLICATION OF THE FIRST-TO-FILE RULE

Both the issues and the parties in the Present Actions substantially overlap with the Delaware Action, thus the first-to-file rule applies. Furthermore, the preference for patent infringement actions against manufacturers instead of retailers weighs in favor of giving preference to the Delaware Action.

### A. Substantial Overlap

The issues in the Present Action substantially overlap with the issues in the Delaware Action. In the Delaware Action, the court will construe the claims in the three patents, determine their validity, and determine their infringement by the Parrot products.

9

These three issues comprise almost all the issues in the Present Actions and may dispose of the Present Actions in their entirety. The similarity of the issues weighs strongly in favor of giving priority to the first-filed Delaware Action. "[T]he only potential results of adjudicating [the Delaware Action and the Present Actions] in parallel fashion would be the [Minnesota] and [Delaware] courts agree on the major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions." *In re Google Inc.*, 588 F. App'x at 990. Giving priority to the Delaware Action will conserve judicial resources and avoid inconsistent decisions.

Precise identity of parties, while often a feature of duplicative actions, is not essential for finding substantial overlap.[3] It is true that the Defendants in the Present Actions are separate legal entities from Parrot, the opposing party in the Delaware Action. And it is true that selling and manufacturing can be distinct acts of patent infringement. 35 U.S.C. § 271(a). But a quick peek behind the veil of the case captions in the Present Actions reveals that Parrot – and the non-Parrot manufacturers – are likely the real parties in interest. QFO has accused Defendants of merely re-selling products they buy from Parrot and others. Given that the sale of goods is often accompanied by a warranty of noninfringement or a promise to indemnify, *see* U.C.C. § 2-312(3) (2012), Parrot and the

---

[3] *See, e.g., In re Google Inc.*, 588 F. App'x at 989-90 (ordering district court to stay proceedings against retailers pending the outcome of declaratory judgment action brought by manufacturer in another district); *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (ordering district court to sever and stay claims against retailers and to transfer separated action against distributor); *see also Ritchie Capital Mgmt., L.L.C.* v. BMO Harris Bank, N.A., 868 F.3d 661, 664 (8th Cir. 2017) (duplicative cases "do[] not require precise identity between parties and actions").

other manufacturers may have to reimburse Defendants for any award to QFO, and Parrot and the other manufacturers might be made parties to the Present Actions pursuant to Federal Rule of Civil Procedure 19 or 20. As such, the parties effectively overlap.

### B. Preference for Manufacturer Suits

Moreover, the Federal Circuit has expressed a strong policy preference for actions against manufacturers – not customers – because "it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). This preference is so strong that it can outweigh the preference for a first-filed action when the first-filed action involves a customer and the later-filed action involves a manufacturer. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Because the manufacturer is generally the "true defendant" in a customer suit, the preference for manufacturer suits avoids "imposing the burdens of trial on the customer." *In re Nintendo of Am., Inc.*, 756 F.3d at 1365. This preference weighs strongly in favor of giving preference to the Delaware Action. Indeed, the Delaware Action is doubly preferable because it is both the first-filed action and the manufacturer action.

The first-to-file rule applies in this case because there is substantial overlap between the issues and the parties in the Delaware Action and the Present Actions. Allowing the Delaware Action to proceed first will promote judicial efficiency, will avoid conflicting decisions, and is consistent with the preference for actions against manufacturers over customers/retailers.

**III.     DISMISSAL, TRANSFER, OR STAY**

Having decided that the first-to-file rule applies and favors the Delaware Action, the Court must decide whether to exercise its discretion by dismissing, transferring, or staying the Present Actions. Because the Present Actions involve some non-Parrot products, thereby implicating non-Parrot manufacturers, the Court finds that staying the Present Actions is the most appropriate resolution.

**A.     Dismissal**

"[I]n the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit," not dismiss it. *Chavez v. Dole Food Co.*, 836 F.3d 205, 220-21 (3d Cir. 2016) (en banc); *see also Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 868 F.3d 661, 665-66 (8th Cir. 2017). A dismissal is less appropriate in this case because, if QFO prevails on validity, triable issues not resolved by the Delaware Action may remain in the Present Actions, including infringement by non-Parrot products and the Defendants' roles in the sale of the accused products.

**B.     Transfer**

A transfer is also less appropriate in this case because the relevant factors do not favor Delaware over Minnesota. 28 U.S.C. § 1404(a) allows the Court to transfer a case "[f]or the convenience of parties and witnesses" or "in the interest of justice." The Court enjoys "much discretion" when considering a transfer request, *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997), but transfer motions "should not be freely granted," *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982) (per curiam), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990).

1. **Convenience of Parties and Witnesses**

Minnesota appears to be a slightly more convenient forum than Delaware for the Present Actions. On the one hand, QFO chose to incorporate in Delaware, thus the Court is skeptical of arguments that Delaware is an inconvenient forum for QFO. *See Sci. Telecomms., LLC v. Adtran, Inc.*, No. 15-647, 2016 WL 1650760, at *1 (D. Del. Apr. 25, 2016) (quoting *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001)). On the other hand, three of the four parties have their principal places of business in Minnesota, one Defendant is incorporated in Minnesota, and none of the Defendants are incorporated in Delaware. Thus, the Court is likewise skeptical of their arguments that Delaware is a more convenient forum. This factor slightly favors Minnesota.

The only non-party witnesses identified by the parties are Peter Spirov, one of the named inventors on QFO's patents, and Parrot's witnesses. But these witnesses do not appear to reside in Minnesota or Delaware. *Minn. Action R&R,* 2017 WL 2638389, at *1, 7. Spirov might testify in the Delaware action, which weighs slightly in favor of transfer. But the convenience of Spirov and Parrot's witnesses might turn out to be irrelevant because the patents' validity and their infringement by Parrot products – the issues for which these witnesses' testimony is most relevant – will likely be resolved in the Delaware Action. Thus, this factor does not strongly favor either forum. Accordingly, the Court will stay the Present Actions pending resolution of the Delaware Action.

The location of books and records favors neither forum. QFO alleges that its records are in Minnesota, and it is likely that Target and Best Buy's records are also in Minnesota, as Minnesota is their principal place of business. Nevertheless, many of QFO's relevant

13

records – as well as Parrot's books and records – are likely to be exchanged in the Delaware Action. Furthermore, most of the discovery will likely be electronic. As such, this factor does not strongly favor either forum.

### 2. Interests of Justice

The interests of justice do not weigh in favor of transfer. The Court considers: (1) judicial economy, (2) plaintiff's choice of forum, (3) comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra*, 119 F.3d at 696.

Judicial economy weighs in favor of transfer, as it would waste resources to have the Court determine issues that will be determined in the Delaware Action. But a stay also avoids duplication of effort and wasted resources to almost the full extent that a transfer would.

QFO's choice of forum is entitled to deference. *See BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995). But such deference may be more limited when – as here – there is evidence of forum shopping. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) ("The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation."); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

QFO argues that it will be more costly to litigate in Delaware because QFO is a small, entrepreneurial start-up company in Minnesota. But QFO has also chosen to bring duplicative litigation. Thus, the costs of litigation do not weigh in favor of either forum.

There is no reason to think that either party will be unable to enforce a judgment or receive a fair trial in either forum. In addition, concerns regarding conflict of law or local law are irrelevant because the Present Actions are governed exclusively by federal law as interpreted by the single U.S. Court of Appeals for the Federal Circuit.

QFO also argues that transferring the Present Actions to Delaware would result in unjust delay because the Delaware Action is stayed pending the IPR appeals, which involve claims not asserted in the Present Actions. The Court finds that the delay QFO might suffer due to transfer – or stay – is not unjust for several reasons. First, QFO consented to the stay in the Delaware Action. If QFO feels it is being harmed by the delay, QFO can ask the Delaware court to lift the stay. Second, it is possible that the claims asserted in the Present Actions will become part of the IPR proceedings on remand pursuant to the Supreme Court's recent decision in *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018). *See Polaris Indus. Inc. v. Arctic Cat, Inc.*, No. 2017-1870, 2018 WL 2435544, at *1 (Fed. Cir. May 30, 2018).[4] If the Federal Circuit remands the IPR appeals for the Board to consider non-instituted claims asserted in the Present Actions, then awaiting the resolution of the IPR proceedings will certainly be worthwhile. Finally, irrespective of the parties' appellate

---

[4] The parties dispute the effect of *SAS Institute, Inc.* on this case. While the Federal Circuit has held that it will not revive non-instituted claims and grounds sua sponte on appeal, *PGS Geophysical AS v. Iancu*, No. 2016-2470, 2018 WL 2727663, at *5 (Fed. Cir. June 7, 2018), a party to an appeal of an IPR may move the Federal Circuit to remand the IPR to allow the Board to consider non-instituted claims and grounds, *Polaris Indus. Inc*, 2018 WL 2435544, at *1; *see also Broad Ocean Techs., LLC v. Nidec Motor Corp.*, No. 2017-1933, 2018 WL 2979928, at *1 (Fed. Cir. June 14, 2018). The Federal Circuit has also held that a party does not waive its right to seek remand by not arguing against partial institution before the Board. *See Polaris Indus. Inc.*, 2018 WL 2435544, at *1; *Broad Ocean Techs., LLC*, 2018 WL 2979928, at *1.

strategies, any delay suffered by QFO is outweighed by the desire to conserve judicial resources and avoid inconsistent decisions.

Ultimately, the Court finds that the transfer factors do not weigh strongly in favor of either forum.[5] As such, the Court will decline to transfer the Present Actions and will instead stay them pending resolution of the Delaware Action.

**C.  Stay**

The Court finds that staying the Present Actions is the most appropriate outcome. The first-to-file rule allows a court to stay a duplicative action where the two actions are "so closely related that substantial savings of litigation resources can be expected," which is the case when the other suit will resolve, moot, or advance "major premises" in the action before the Court. *In re Google Inc.*, 588 F. App'x at 991; *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). A stay is warranted in this case because the Delaware Action will likely resolve, moot, or advance major issues and disputes in the Present Actions, such as claim construction, invalidity, and infringement by the Parrot products. There is no need to proceed with three Minnesota actions when one Delaware action will suffice for now. *See id.* at 991.

---

[5] Some of these factors are also considered in deciding whether an exception to the first-to-file rule applies. *Futurewei*, 737 F.3d at 708. While the Court finds that the factors do not so strongly favor Delaware as to warrant transfer, it also finds that the relevant factors do not so strongly favor Minnesota as to warrant an exception to the first-to-file rule.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Best Buy's Motion to Dismiss or, in the alternative, Transfer or Stay [Civil No. 17-5011, Docket No. 24] is **GRANTED in part**.

2. Defendant Target's Motion to Dismiss or, in the alternative, Transfer or Stay [Civil No. 17-5012, Docket No. 19] is **GRANTED in part**.

3. Defendant Amazon's Motion to Dismiss or, in the alternative, Transfer or Stay [Civil No. 17-5014, Docket No. 17] is **GRANTED in part**.

4. The Present Actions [Civil Nos. 17-5011, 17-5012, and 17-5014] are **STAYED** pending resolution of the Delaware Action.

DATED: August 17, 2018                   _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                           Chief Judge
                                         United States District Court